CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 28, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRANDON LUIS CROSBY,              )
                                  )
            Plaintiff,            )        Case No. 7:23-cv-00124
                                  )
v.                                )        **MEMORANDUM OPINION**
                                  )
CARL MANIS *et al.*,              )        By:    Hon. Thomas T. Cullen
                                  )               United States District Judge
            Defendants.           )

Plaintiff Brandon Luis Crosby, now known as Abdullah Al-Waliy Ar-Razzaaq Badie,[1] proceeding *pro se*, filed this action under 42 U.S.C. § 1983 against various employees of the Virginia Department of Corrections ("VDOC"). Defendants Carl Manis, Rick White, Christopher King, J. Adams, James Blevins, Johnny Hall, Dwayne Turner, Carroll Stanley, and Laura Harris (the "Moving Defendants") have moved to dismiss Plaintiff's claims against them. (*See* Defs.' Mot. to Dismiss [ECF No. 109]; Mem. Supp. Defs.' Mot. to Dismiss [ECF No. 110].) For the following reasons, the court will grant the Moving Defendants' motion.

**I.**

Plaintiff's second amended complaint, the operative pleading, contains the following factual allegations, which the court accepts as true for the purpose of ruling on Defendants' motion to dismiss. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

On July 5, 2022, Plaintiff was transferred from Wallens Ridge State Prison to Red Onion State Prison after allegedly assaulting Wallens Ridge staff. (Second Am. Compl. ¶¶ 17,

---

[1] On March 25, 2025, Plaintiff notified the court of a change to his legal name. (*See* Notice [ECF No. 125].) In this opinion, the court simply refers to Badie as "Plaintiff."

19 [ECF No. 69].) Between July 5 and August 1, 2022, there were no incidents between Plaintiff and prison staff. (*Id.* ¶ 18.)

On August 1, 2022, Plaintiff was confined, alone, in cell B-312 at Red Onion. (*Id.* ¶ 19.) He had no interaction with prison staff between 10:00 p.m. and 1:00 a.m. (*Id.* ¶ 20.) Then, around 1:02 a.m., Defendant J. Baker performed a routine security check for all the cells in the B-3 pod, including Plaintiff's. (*Id.* ¶ 21.) Around 1:08 a.m., after checking a neighboring cell, Baker returned to Plaintiff's cell for no apparent reason and sprayed him with OC spray, waking Plaintiff from his sleep. (*Id.* ¶¶ 21–22.) Plaintiff then got out of bed and asked Baker why he had sprayed him. (*Id.* ¶ 23.) Baker told him, "You shouldn't [be] assaulting staff or threatening them, you f*** with one of us[,] you f*** with all of us." (*Id.*) Plaintiff responded, "I don't know you and never did anything to you," and Baker replied, "Welcome to Red Onion, we will beat your ass if not damn near kill you n*****, if you [are] not good with God you should do so now." (*Id.* ¶ 24.) At that time, Defendant D. Mullins arrived at Plaintiff's cell, holding a camera with a closed lens. (*Id.* ¶¶ 25, 29.) Plaintiff suffered loss of vision in his left eye as a result of the OC spray. (*Id.* ¶ 26.)

Later that night, Defendants Barton, Brandham, and Looney came to the B-3 pod. (*Id.* ¶ 28.) Looney and Brandham approached Plaintiff's cell, and one of them asked Plaintiff why he had tried to "pop the sprinklers." (*Id.*) Plaintiff responded that he had not tried to "pop" anything. (*Id.*) One of them then asked Plaintiff if he would "cuff up," and Plaintiff complied by kneeling to be shackled. (*Id.*) Defendant Looney and other staff then escorted Plaintiff to the shower to rinse the OC spray off. (*Id.* ¶ 30.) While Plaintiff was in the shower, Defendants Barton, Looney, Brandham, Baker, Nicky Mullins, D. Mullins, and Jackson yelled at him to

"stop resisting." (*Id.* ¶ 31.) Looney then slammed Plaintiff into the wall and punched him several times in his side. (*Id.* ¶ 32.) Defendants Brandham, Baker, Jackson, and N. Mullins also used physical force against Plaintiff. (*Id.*) During this altercation, Plaintiff was hit on his side and someone stepped on his shackles, twisted his cuffs, and bent his wrists. (*Id.*) Plaintiff was then pulled out of the shower, still wet and wearing only shorts and socks, and was escorted to medical and placed in a strip cell. (*Id.* ¶¶ 33–34.) Plaintiff suffered cuts on his ankles and wrists because of Defendants' actions. (*Id.* ¶ 35.)

That same night, Plaintiff told Defendants White, Blevins, King, Stanley, Turner, Harris, and Hall what had happened. (*Id.* ¶ 42.) He was also charged with "attempting to destroy state property" by Defendant Baker and "disobeying a direct order" by Defendant Looney. (*Id.* ¶ 43.)

On August 30, 2022, Plaintiff asked Defendant Adams, his hearing officer, to see video footage related to the disobeying-a-direct-order charge. (*Id.* ¶ 44.) Adams denied his request, stating that the video was inconclusive. (*Id.*) Adams did allow Plaintiff to view video footage related to the attempted-destruction-of-state-property charge but denied Plaintiff's requests to see video from other angles or to watch the video a second time. (*Id.*)

On August 31, 2022, a hearing was held before Defendant Adams on Plaintiff's disobeying-a-direct-order charge. (*Id.* ¶ 46.) Plaintiff was given less than one hour to prepare his defense. (*Id.*) During the hearing, Defendant Baker falsely testified that he only looked in Plaintiff's cell once on the night of the incident, and Plaintiff was again denied the opportunity to view additional video footage of the incident. (*Id.*) At the conclusion of the hearing, Defendant Adams found Plaintiff guilty. (*Id.*)

A few weeks later, Plaintiff appeared for a hearing on his attempted-destruction-of-state-property charge, again before Defendant Adams. (*Id.* ¶ 45.) Again, he was given little time to review evidence and prepare his defense. (*Id.*) At Plaintiff's request, Adams adjourned the hearing to review the available video footage of the incident a second time, but he again deemed it inconclusive. (*Id.*) Adams found Plaintiff guilty on this charge as well, and Defendant White upheld his finding on appeal. (*Id.* ¶¶ 45–47.)

Following his hearings on these charges, Plaintiff attended a DDT hearing where these infractions were used as evidence of his behavioral issues and to justify placing Plaintiff in long-term segregation, indefinite solitary confinement, and a "step-down program." (*Id.* ¶ 48.) Plaintiff was also placed at GCA level 4, meaning he could not earn any good-time credit. (*Id.*) He also received other penalties, including spending almost all of his time in an 8-by-10 cell, with no way to exercise, no television, no educational opportunities, no law-library access, no religious services or other out-of-cell programming, only three showers per week, no haircuts, and limited commissary access. (*Id.* ¶ 49.) His visitation was also limited to one hour-long no-contact visit, one video visit, and two 20-minute calls per month. (*Id.*) Plaintiff claims there is no meaningful way out of these limitations. (*Id.* ¶ 50.)

Plaintiff also claims there have been a plethora of similar incidents of misconduct by prison staff against other inmates. (*Id.* ¶ 53.) He claims Defendants Manis,[2] White,[3] Blevins,[4]

---

[2] Defendant Manis served as Western Regional Administrator for VDOC at the time of the events described in the Second Amended Complaint. (Second Am. Compl. ¶ 57.) Plaintiff claims Manis "was in direct control" of first-level appeals of grievances and disciplinary actions and that he has failed to enforce the use-of-force policies among his subordinates. (*Id.*)

[3] Defendant White is the Warden of Red Onion State Prison. (Second Am. Compl. ¶ 58.)

[4] Defendant Blevins served as Assistant Warden at Red Onion at the time of these incidents. (Second Am. Compl. ¶ 58.) Plaintiff alleges White and Blevins regularly hear complaints about the misuse of force by prison

King,[5] Hall,[6] Turner,[7] Stanley,[8] Harris,[9] and Barton failed to supervise their subordinates in a manner that would prevent such misconduct, and that their failure to intervene led to his injuries in this case. (*Id.* ¶¶ 53–55.)

Plaintiff asserts several § 1983 claims based on these factual allegations. (*See id.* ¶¶ 57–69, Prayer for Relief.) As against the Moving Defendants, Plaintiff claims:

    (i)    **Defendants Manis, White, King, Blevins, Hall, and Turner** violated his Eighth Amendment right to be free from cruel and unusual punishment based on their failure to protect Plaintiff and supervisory liability, and that they violated his Fourteenth Amendment rights by denying him due process of law and failing to train their subordinates;

    (ii)    **Defendants Stanley and Harris** violated his Eighth Amendment right to be free from cruel and unusual punishment by their failure to protect Plaintiff; and

    (iii)    **Defendant Adams** violated his Fourteenth Amendment right to due process of law by failing to give him adequate process during his disciplinary hearings.

---

staff but have "failed to curb known conduct or take disciplinary action" despite their duty to enforce governing policies, train correctional staff, and exercise appropriate oversight. (*Id.*)

[5] Defendant King was the "Major/Chief of Security" at Red Onion at the time of these events. (Second Am. Compl. ¶ 59.)

[6] Defendant Hall was a "Captain/Watch Commander." (Second Am. Compl. ¶ 59.) According to Plaintiff, Hall and King were "in direct control of the safety and security of the institution" but failed to protect Plaintiff.

[7] Defendant Turner served as Chief of Housing and Programs at Red Onion. (Second Am. Compl. ¶ 60.) Plaintiff claims he controlled the housing units and was responsible for ensuring the safety of the inmates therein and supervising correctional staff. (*Id.*)

[8] Defendant Carrol Stanley was a VDOC investigator. (Second Am. Compl. ¶ 61.)

[9] Defendant Harris served as Chief of Operations and Logistics. (Second Am. Compl. ¶ 61.) Plaintiff alleges Harris and Stanley failed to properly investigate the incidents he describes. (*Id.*)

(*Id.*) Plaintiff also asserts state-law tort claims for gross negligence and intentional infliction of emotional distress against each Moving Defendant. (*See id.* ¶¶ 57–65.) He seeks damages, declaratory relief, and injunctive relief. (*See id.* Prayer for Relief.)

The Moving Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims for relief against them. (*See generally* Defs.' Mot. to Dismiss; Mem. Supp. Defs.' Mot. to Dismiss.)

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the

complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall*, 846 F.3d at 765 (citations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief' as required by Rule 8." *Iqbal*, 556 U.S. at 679.

### III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### A.  Eighth Amendment Claims

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Id.* (citations omitted). "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015) (citing *Farmer*, 511 U.S. at 832).

Included in the Eighth Amendment's guarantee is a requirement that prison officials "take reasonable measures to guarantee the safety of the inmates." *Cox v. Quinn*, 828 F.2d 227, 235 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 832). However, a prison official's failure to prevent an injury does not automatically rise to the level of a constitutional violation. *See Farmer*, 511 U.S. at 834. To state a claim against a prison official for failure to protect, an inmate must allege facts showing that (1) "the deprivation alleged [is], objectively, sufficiently serious" and (2) the prison official had a "sufficiently culpable state of mind." *Id.* (citations omitted).

To satisfy the first element, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (citations omitted). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)).

To satisfy the second element, the plaintiff must plead facts showing the defendant was "deliberately indifferent" to the plaintiff's health and safety. *See Farmer*, 511 U.S. at 834 (citations omitted). Deliberate difference is "a very high standard." *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (citations and internal quotation marks omitted). "A prison official demonstrates deliberate indifference if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Odom*, 349 F.3d at 770). To state an Eighth Amendment claim, the plaintiff must

allege that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" *and* that he or she actually drew the inference. *Id.*

Plaintiff alleges that Defendants Manis, White, King, Blevins, Hall, Turner, Stanley, and Harris are all liable for failing to protect him from the conduct of other Defendants.[10] (*See* Second Am. Compl. ¶¶ 57–61.) But Plaintiff has not alleged facts that would allow the court to infer that these Defendants knew of yet disregarded a serious risk to Plaintiff's safety.

**Defendant Manis.** Plaintiff's claim against Defendant Manis stems from his allegations that Manis "receives notice of all incidents of misuse of force and didn't enforce the use of force policy or policies that govern incident[s] leading to Plaintiff's injuries" and that he "deliberately ignored incidents resulting in his subordinates feeling comfortable to assault Plaintiff." (*Id.* ¶ 57.) These allegations do not show that Manis knew of yet disregard a substantial risk of harm to Plaintiff.

Plaintiff cannot sustain a claim based only on Manis's position as Regional Administrator and access to general knowledge of prison goings-on resulting from that position. *See Smalley v. Hall*, No. 1:23CV913 (RDA/WEF), 2025 WL 634345, at *6–7 (E.D. Va. Feb. 26, 2025) ("A failure-to-protect claim cannot be predicated merely on knowledge of general risks of violence in a detention facility. . . . Defendants must have exhibited deliberate or callous indifference of prison officials to *specific known risks of such harm*.") (emphasis in original); *Black v. Grimes*, No. 3:17CV216, 2018 WL 4040232, at *3 (E.D. Va. Aug. 23, 2018) ("[G]eneral knowledge of facts creating a substantial risk of harm is not enough. The prison

---

[10] Plaintiff also alleges that these Defendants are liable for their deliberate indifference to his health and safety. (*See* Compl. ¶¶ 57–61.) However, since deliberate indifference is an element of an Eighth Amendment failure-to-protect claim, rather than a stand-alone theory of liability, *see Farmer*, 511 U.S. at 834, the court analyzes his failure-to-protect and deliberate-indifference claims together.

official must also draw the inference between those general facts and the specific risk of harm confronting the inmate.'") (quoting *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998)). "Courts have found prison officials to be actually aware of a sufficiently substantial risk of assault where," for example, "custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities." *Fishburne v. SC Dep't of Corr.*, No. 8:23-CV-5469-TMC-WSB, 2025 WL 581890, at *8 (D.S.C. Jan. 17, 2025), *report and recommendation adopted*, No. 8:23-CV-05469-TMC, 2025 WL 579990 (D.S.C. Feb. 21, 2025) (citing *Coles v. Clarke*, C/A No. 3:12-cv-01, 2014 WL 4546805, at *3–4 (E.D. Va. Sept. 12, 2014)). But "as the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases," and "[s]o, too, does the official's ability to respond." *Reed v. Robinson*, C/A No. 3:20-cv-200, 2021 WL 3192166, at *5 (E.D. Va. July 28, 2021) (citations omitted).

Here, Plaintiff makes only general, conclusory allegations about Manis's knowledge of "incidents" of the use of force within the prison. He has not shown that Manis knew of yet disregarded any substantial risk *to Plaintiff* that resulted in his injuries. *See Gil v. Doe*, No. 1:22CV618 (RDA/JFA), 2023 WL 7924861, at *7 (E.D. Va. Nov. 14, 2023), *aff'd*, No. 23-7244, 2024 WL 3565825 (4th Cir. July 29, 2024) (dismissing failure to protect claim where defendants did not know "of threats to Plaintiff posed by a specific source, nor did they place Plaintiff in the same cell as an inmate known to have violent propensities") (citations omitted); *Coleman v. Funkhouser*, No. 6:20-CV-00049, 2021 WL 4487136, at *3 (W.D. Va. Sept. 30, 2021) (finding the plaintiff had failed to state a claim for failure to protect where he alleged only that the defendant was superintendent of the detention facility, was responsible for implementing

policies to protect inmates from violence of other inmates, and promulgated or maintained a housing policy that placed inmates charged with sexual offenses in the same pod); *see also Rafferty v. South Carolina*, No. 3:08-2020-HMH-JRM, 2008 WL 4849631, at *3 (D.S.C. Nov. 5, 2008) ("[T]he failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."). Even taking Plaintiff's allegations as true, he has not plausibly alleged that Manis failed to protect him in violation of the Eighth Amendment.

Plaintiff's allegations are also insufficient to state a claim against Manis in his supervisory capacity. A plaintiff can only maintain a § 1983 claim against a supervisor if he alleges (1) "that the supervisor had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiff," (2) "the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013) (internal quotation marks omitted).

Here, Plaintiff's failure to adequately allege Manis's knowledge of the particular risk of harm to Plaintiff also belies any claim for supervisory liability. Plaintiff has not shown that Manis knew his subordinates were "engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury *to plaintiff*" or shown any concrete causal connection between Manis's actions and the harm that ultimately befell Plaintiff. *Id.* Instead, Plaintiff's allegations are based only on Manis's administrative responsibilities, which "are insufficient to

confer supervisory culpability." *Anderson v. Warden,* Civ. Action No. PWG–14–216, 2014 WL 2916882, at *3 (D. Md. June 25, 2014); *cf. Toomer v. Baltimore City Det. Ctr.,* No. CIV.A. DKC 12-0083, 2014 WL 4678712, at *6 (D. Md. Sept. 18, 2014) (holding allegations that defendants were aware of corruptness of guards and failed "to clean up operations in the face of known, widespread corruption" did not establish knowledge necessary to confer supervisory liability). To find Manis liable under such circumstances would amount to holding him vicariously liable as a result of his position of authority, which is decidedly improper in § 1983 cases. *See Ashcroft v. Iqbal,* 556 U.S. 662 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution).

Because Plaintiff's allegations are insufficient to trigger individual or supervisory liability for Manis, the court will dismiss Plaintiff's Eighth Amendment claim against him.

**Defendants White and Blevins.** Plaintiff's claims against Defendants White and Blevins fare no better. Those claims stem from allegations that White and Blevins "hear complaints directly, verbally or through grievances about their misuse of force or misconduct and failed to curb known conduct or take disciplinary action." (Second Am. Compl. ¶ 58.) Plaintiff further alleges that White and Blevins "deliberately neglected" their alleged duties "to enforce the policies and or procedures that govern these incidents," to train other correctional staff, and to exercise oversight over their subordinates. (*Id.*) And Plaintiff claims White and Blevins created an environment in which their subordinates felt comfortable depriving him of his rights. (*Id.*)

These allegations, like those against Defendant Manis, do not show that White and Blevins had specific knowledge of the risk of harm to Plaintiff or consciously disregarded any such risk. For the same reasons set forth above, Plaintiff's vague allegations of White's and Blevins's general knowledge of "incidents" and responsibility to enforce prison policy are insufficient to state an Eighth Amendment claim against them, individually or as supervisors. *See Smalley*, 2025 WL 634345, at *6–7; *Black*, 2018 WL 4040232, at *3; *Coleman*, 2021 WL 4487136, at *3; *Anderson*, 2014 WL 2916882, at *3. The court will therefore dismiss Plaintiff's Eighth Amendment claims against White and Blevins.

**Defendants Hall and King.** Plaintiff's claims against Defendants Hall and King arise from allegations that they "were put on direct control of the safety and security of the institution" but "failed to protect Plaintiff by taking any action on complaints . . . of misconduct of staff that came across their desk[s]." (Second Am. Compl. ¶ 59.) Plaintiff further claims that Hall and King, like White and Blevins, "deliberately neglected" their alleged duties to enforce prison policies and procedures, train staff, and exercise oversight over their subordinates. (*Id.*) Accordingly to Plaintiff, this neglect led their subordinates to feel comfortable acting in a manner that deprived Plaintiff of his constitutional rights. (*Id.*)

These allegations, again, are too vague to establish that Hall or King had the requisite knowledge of a substantial risk of harm to Plaintiff. Plaintiff does not allege, in more than a conclusory manner, that either Hall or King was aware of particular instances of unconstitutional conduct that would have alerted them to the need to protect Plaintiff from the risk that other prison officials would use excessive force against him while performing a security check of his pod. Therefore, for the same reasons as above, Plaintiff has not stated

plausible Eighth Amendment claims against Hall or King, and the court will grant the Moving Defendants' motion to dismiss these claims.

**Defendant Turner.** Plaintiff's claim against Defendant Turner is similarly based on Turner's alleged oversight over other staff, responsibility to ensure "the safety and security of the housing units," and failure to enforce prison policy. (Second Am. Compl. ¶ 60.) Plaintiff also alleges that Turner "was told of excessive force or the misconduct of his staff verbally, face to face or through notifications of incidents or complaints" yet "deliberately ignored them." (*Id.*) As with other Defendants, Plaintiff's claims that Turner's failures resulted in his subordinates "feeling comfortable . . . depriving Plaintiff of his rights." (*Id.*) As with Plaintiff's claims against Manis, White, Blevins, Hall, and King, the lack of specific allegations of particularized knowledge is detrimental to Plaintiff's claim against Defendant Turner. The court will therefore dismiss this claim, too.

**Defendants Stanley and Harris.** Finally, Plaintiff's Eighth Amendment claims against Stanley and Harris are similarly predicated on their general knowledge of all "incidents" and "complaints" to which they are privy as a result of their roles (as investigator and chief of operations and logistics, respectively) and generalized duties to investigate and prevent all such incidents. (*See* Second Am. Compl. ¶ 12 (alleging Stanley and Harris "have a duty to properly investigate all incidents and complaints of misuse of force or staff/subordinates['] misconduct"); *id.* ¶ 61 (alleging they "failed to properly investigate all incidents they were notified of and failed to take action or curb the known pattern of excessive force or misconduct").) Thus, as with the Defendants named above, the claims against Stanley and

Harris fail to create any individual or supervisory liability for failing to protect Plaintiff, and the court will grant the Moving Defendants' motion to dismiss these claims.

## B. Fourteenth Amendment Claims

The Moving Defendants also seek dismissal of all Fourteenth Amendment claims against Defendant Manis, White, King, Blevins, Hall, Turner, and Adams. (*See* Mem. Supp. Defs.' Mot. to Dismiss 5–21.) The court construes Plaintiff's complaint as asserting both procedural due process claims based on the events related to his disciplinary hearings and substantive due process claims based on Defendants' failure to train their subordinates.

### 1. Denial of Due Process

The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV. To state a § 1983 claim based on a violation of procedural due process, a plaintiff must "(1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Prisoners have some liberty interests in certain conditions of their confinement whose deprivation triggers procedural due process protections. *Id.* (citing *Meachum v. Fano*, 427 U.S. 215 (1976); *Wolff v. McDonnell*, 418 U.S. 539 (1974)); *see Thorpe v. Clarke*, 37 F.4th 926, 942 (4th Cir. 2022) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, but a prisoner's liberty does not disappear entirely."). A due process claim in the prison context requires showing (1) the "denial of an interest that can arise either from the Constitution itself or from state law policies" and (2) that "this denial imposed on him an atypical and significant hardship in relation to the ordinary incidents of prison life." *Prieto*, 780 F.3d at 251 (citations

omitted). The Supreme Court and Fourth Circuit have recognized that the imposition of extreme or indefinite solitary confinement, especially coupled with the loss of good-time credit, regular visitations, the ability to participate in educational activities, or other similar privileges, can trigger procedural due process protections. *See Wilkinson v. Austin*, 545 U.S. 209, 214–15 (2005); *Thorpe*, 37 F.4th at 942.

The penalties Plaintiff describes in his second amended complaint are similar to those recognized in *Wilkinson* and *Thorpe* as sufficiently harsh and atypical to trigger due process protections. (*See* Second Am. Compl. ¶¶ 48–51.) Accordingly, construing the allegations in the light most favorable to Plaintiff, the court concludes that constitutionally adequate process was required before these penalties could be imposed. The success of Plaintiff's due process claims therefore turns on whether he received adequate process.

**Defendant Adams.** Plaintiff's due process claims largely center on the actions of Adams, who presided over both of Plaintiff's disciplinary hearings. (*See* Second Am. Compl. ¶¶ 44–46.) He alleges that Adams prevented him from seeing video footage related to his disobeying-a-direct-order charge and only allowed Adams to view video footage related to his attempting-to-destroy-state-property charge from one angle, despite Plaintiff's insistence that other angles would have aided his defense. (*Id.*) Concerning both charges, Plaintiff also makes vague and conclusory allegations that Adams "denied Plaintiff exculpatory evidence," "denied Plaintiff adequate process from the beginning till [sic] the end of the hearing," "found him guilty with no evidence to support his finding," and "was partial, biased and unpro[f]essional." (*Id.* ¶¶ 45–46.) Concerning his destruction-of-property charge, Plaintiff also alleges that

Adams's finding of guilt was based on the false statements of Defendant Baker "and not what he put down."[11] (*Id.* ¶ 46.)

Plaintiff admits that his disobeying-a-direct-order charge was dismissed by Defendant White on appeal. (*See* Second Am. Compl. ¶ 45; *see also* Exhibit B to Pl.'s Am. Compl. [ECF No. 13-2] (memorandum from Warden White informing Plaintiff of the dismissal, incorporated by reference into Plaintiff's second amended complaint).) Based on this dismissal, the process Plaintiff received appears to have been constitutionally adequate despite his concerns over the sufficiency of the evidence and inaccessibility of video footage. *See Seignious v. Balt. Co. Dep't of Corr.,* No. CV SAG-22-144, 2022 WL 17417463, at *3 (D. Md. Dec. 5, 2022) ("Any infringement of Plaintiff's due process rights was . . . cured by his successful administrative appeal, because there is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process.") (collecting cases); *see also id.* ("[T]he 'administrative appeal process is part of the due process protection afforded prisoners.'") (quoting *Harper v. Lee,* 938 F.2d 104, 105 (8th Cir. 1991)). Plaintiff therefore lacks any constitutional claim based on Adams's actions relative to his disobeying-a-direct-order hearing.

Plaintiff also failed to state a due process claim against Adams relating to his destruction-of-property hearing. First, documents Plaintiff incorporates by reference in his second amended complaint contradict his allegation that video footage from the angle Plaintiff

---

[11] Plaintiff also alleges he was given only 30 minutes to an hour before the hearing to prepare his defense to his property-related charge, but does not allege who imposed such a restriction or how it impaired his defense of that charge. (*Id.* ¶ 45.) Without more, the court cannot conclude that Adams or any other Defendant is responsible for a constitutional violation based on Plaintiff's limited preparation time. *See Williamson v. Stirling,* 912 F.3d 154, 171 (4th Cir. 2018).

sought was available yet withheld. (*See id.* ¶ 47; Exhibit D to Pl.'s Am. Compl. (memorandum from Warden White explaining that "[t]he pod cameras do[] not see inside the cells").) Because that footage was unavailable, Adams's failure to review or provide any such footage was not a denial of due process. Second, Plaintiff's allegation that Adams wrongfully relied on false testimony from Defendant Baker amounts to a disagreement with Adams's credibility determinations and analysis of the evidence rather than a denial of process. *See, e.g.*, *Yost v. Hammer*, No. 1:11-CV-00439-GBC PC, 2012 WL 1583134, at *4 (E.D. Cal. May 4, 2012) ("Plaintiff's disagreement with hearing officer's weight and credibility assessments will not support a federal claim."). Plaintiff's allegations show that he received a full hearing on his charge and that Adams reviewed video and documentary evidence, and heard testimony and argument. Despite Plaintiff's dissatisfaction with the outcome of the disciplinary hearing, the court cannot find that his allegations state a claim for denial of due process.

**Defendants Manis and White.** Plaintiff also seeks to hold Manis and White liable based on grounds that they each upheld Adams's decision on Plaintiff's destruction-of-property charge on appeal "without doing an investigation." (Second Am. Compl. ¶ 47.) Plaintiff alleges in a conclusory manner, and without additional support, that Manis and White "know that there is no proper due process or way for a plaintiff to fight a false charge, resulting in a biased and partial decision totally disregarding the exculpatory evidence." (*Id.*) First, the appeal documents incorporated by reference in Plaintiff's second amended complaint contradict his allegations that White and Manis affirmed his guilt without any investigation of their own. (*See* Exhibits D & E to Pl.'s Am. Compl. (describing their review of the available information in connection with each level of appeal).) Plaintiff's claims against Manis and

White appear to be based on no more than his discontentment with the outcome of his appeals. This is not enough to establish a due process violation. *See Alvarez v. Maryland Dep't of Corr.,* No. CV PX-17-141, 2018 WL 1211533, at *15 (D. Md. Mar. 8, 2018) ("[Plaintiff's] disagreement with the outcome of his grievances does not equate with a violation of his rights . . . to due process."). The court will therefore grant Defendants' motion to dismiss the due process claims against Manis and White.

**Defendants King, Blevins, and Hall.** Although Plaintiff claims in a conclusory manner that the actions of King, Blevins, and Hall "constitute . . . denial of due process in violation of the 14th Amendment," he makes no allegations as to their involvement in his disciplinary proceedings or the imposition of any penalties without sufficient process. (*See* Second Am. Compl. ¶¶ 58–59.) Yet "[t]o establish personal liability under § 1983, . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution." *Williamson v. Stirling,* 912 F.3d 154, 171 (4th Cir. 2018) ("[M]ere knowledge of such a deprivation does not suffice.") Because he has not alleged that King, Blevins, Hall, or Turner personally participated in the actions leading to his alleged due-process violations, Plaintiff has failed to state plausible claims for the denial of procedural due process against any of these Defendants. The court will therefore dismiss any due process claims against King, Blevins, and Hall, as well.

## 2. Failure to Train

Plaintiff also generally alleges that Defendants Manis, White, Blevins, King, Hall, and Turner are liable for "failure to train . . . in violation of the 14th Amendment." (*See* Second

Am. Compl. ¶¶ 57–60.) Failure to train is not a standalone constitutional claim, but rather a theory of holding a party—generally, a municipal or corporate entity—liable for the constitutional violations of its employees. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). And when such claims are brought against individual defendants, they are better understood as supervisory-liability claims. *See, e.g.*, *Baker v. Stover*, No. 3:23-CV-710, 2024 WL 4122036, at *4 (E.D. Va. Sept. 6, 2024) (construing "failure to train and supervise" claim as a failure-to-train claim relative to municipal liability and a supervisory-liability claim relative to plaintiff's individual capacity claims against defendant). But, as set forth above, Plaintiff has failed to state claims against Defendants Manis, White, Blevins, King, Hall, and Turner based on supervisory liability. And to the extent Plaintiff wishes to hold Red Onion State Prison, Wallens Ridge State Prison, or VDOC liable for failure to train by suing Defendants in their official capacities, those entities are not "persons" within the meaning of § 1983 and are immune from suit for § 1983 claims. *See Perdue v. Penalosa*, 38 F.3d 1213, 1213 (4th Cir. 1994); *Johnson v. McCowan*, 549 F. Supp. 3d 469, 475 (W.D. Va. 2021). Accordingly, the court will grant the Moving Defendants' motion to dismiss any failure-to-train claims against them.

### C. State-Law Tort Claims

Lastly, Plaintiff raises state-law claims for gross negligence and intentional infliction of emotional distress against each of the Moving Defendants. (*See* Second Am. Compl. ¶¶ 57–65.)

### 1. *Gross Negligence*

"Gross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other

person.'" *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (2004)). It "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* "To prove gross negligence under Virginia law, the plaintiff must show the basic elements of negligence: 'a legal duty, a violation of the duty, and a consequent injury.'" *DJ by & through Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 340 (E.D. Va. 2020) (quoting *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751, 754 (Va. 1988)). And "[b]ecause the standard for gross negligence in Virginia is one of indifference, not inadequacy, a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott*, 791 S.E.2d at 732 (citations omitted).

Plaintiff does not clarify which of his allegations against the Moving Defendants allegedly amount to gross negligence. Liberally construing his complaint, the court infers that Plaintiff's gross negligence claims against Manis, White, Blevins, King, Hall, and Turner are based on their failure to enforce prison policy and exercise proper supervision over their subordinates. (*See* Second Am. Compl. ¶ 57 (alleging Manis "didn[']t enforce the use of force policy or policies" and "deliberately ignored incidents resulting in his subordinates feeling comfortable to assault Plaintiff and deprive him of due process"); *id.* ¶¶ 58–60 (alleging White, Blevins, King, Hall, and Turner "fail[ed] to curb known conduct" and neglected their duties to "trai[n] correctional staff and exercis[e] oversight to [e]nsure their duties in a professional manner").) But the Supreme Court of Virginia does not recognize claims for negligence based on negligent supervision. *See A.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 475 (Va. 2019). Accordingly, Plaintiff's gross-negligence claims premised on Defendants' failure to

supervise their subordinates fail as a matter of Virginia law. *See id.*; *see also Johnson v. McCowan*, 549 F. Supp. 3d 469, 476 n.3 (W.D. Va. 2021) (rejecting plaintiff's contention that he could bring a gross-negligence claim based on negligent supervision, and explaining that "[p]ivoting to gross negligence cannot save [Plaintiff's] negligent supervision claim because its failure lies not in the degree of indifference alleged, but in the underlying theory of culpability" and "[t]he degree to which defendants violated their duty to supervise is irrelevant if the duty doesn't exist in the first instance").

Plaintiff's claims against Harris and Stanley are based on allegations that they "failed to properly investigate all incidents they were notified of and failed to take action or curb the known pattern of excessive force or misconduct of Defendants." (Second Am. Compl. ¶ 61.) But courts analyzing gross negligence claims based on a prison official's failure to prevent harm to an inmate have found that such claims, like Eighth Amendment failure-to-protect claims, require that the official have knowledge, actual or constructive, of the risk of harm specific to Plaintiff. *See, e.g.*, *Hobbs v. Kelly*, No. 1:23CV00003, 2023 WL 3563010, at *4 (W.D. Va. May 19, 2023) (expressing the official's duty as one "to protect an incarcerated person from a substantial and known risk of harm") (citing *Farmer*, 511 U.S. at 836). "A duty of care arises only where the 'particular circumstances of that special relationship' make the danger of harm from a third party foreseeable." *Bradford v. Craom*, No. 0386-22-2, 2023 WL 2487310, at *3 (Va. Ct. App. Mar. 14, 2023) (quoting *Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134, 140 (Va. 2001)). The court has already found that Plaintiff's allegations against Harris and Stanley do not plausibly show that they had knowledge of the particular risk of harm to Plaintiff that caused his injuries. For this reason, Plaintiff has not stated claims for gross

negligence against Harris or Stanley. The court will therefore dismiss Plaintiff's gross-negligence claims against each of the Moving Defendants.

### 2. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress under Virginia law requires proof that (1) "the wrongdoer's conduct was intentional or reckless"; (2) "the conduct was outrageous or intolerable"; (3) "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress"; and (4) "the resulting emotional distress was severe." *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007). "[B]ecause of the risks inherent in torts where injury to the mind or emotions is claimed, such torts are not favored in the law." *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) (citations and internal quotation marks omitted).

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the resulting emotional distress was "extreme" and "so severe that no reasonable person could be expected to endure it." *Kissinger-Stankevitz v. Town of Tappahannock*, 750 F. Supp. 3d 590, 631 (E.D. Va. 2024) (citations omitted). Allegations that a plaintiff "was nervous, could not sleep, experienced stress and its physical symptoms, withdrew from activities, and was unable to concentrate at work" are insufficient to state a plausible claim. *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991).

Plaintiff's allegations concerning his distress in this case are similarly insufficient. He alleges that he has "been cycled through a plethora of PTSD, anxiety, depression and many other sleeping medications to attempt to cope with his fears and paranoia." (Second Am. Compl. ¶ 67.) The need for medication to address these symptoms does not rise to the level of severity necessary to support a claim for intentional infliction of emotional distress. *See*

*Harris*, 624 S.E.2d at 34 (holding symptoms including "nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling" and "mortification, humiliation, shame, disgrace, and injury to reputation" were insufficient to satisfy the fourth element of plaintiff's IIED claim). This deficiency dooms any intentional-infliction-of-emotional-distress claim by Plaintiff against Defendants. The court will therefore dismiss these claims as well.

## IV.

For the foregoing reasons, the court will **GRANT** the Moving Defendants' Motion to Dismiss and will **DISMISS** Plaintiff's claims against them. Additionally, given that Defendants do not oppose Plaintiff's motion to voluntarily dismiss his claims against Defendant D. Mullins (ECF No. 125), the court will **GRANT** that motion and **DISMISS** Plaintiff's claims against Defendant Mullins as well.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 28th of March, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE