CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ABDULLAH A. BADIE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00124 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DOUGLAS BARTON, *et al.*, | ) | By:     Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendants. | ) | |

Plaintiff Abdullah A. Badie, a Virginia inmate proceeding *pro se*, filed this civil-rights action under 42 U.S.C. § 1983 against several employees of the Virginia Department of Corrections ("VDOC"). Plaintiff's second amended complaint, the operative complaint, asserts claims for relief against Defendants Carl Manis, Rick White, Christopher King, J. Adams, James Blevins, Johnny Hall, Dwayne Turner, Carroll Stanley, Laura Harris, Douglas Barton, J. Looney, D. Branham, J. Baker, D. Mullins, Derrick Jackson, and Nicky Mullins. (*See* Second Am. Compl. 1–6 [ECF No. 69].) In March of last year, the court dismissed Plaintiff's claims against Manis, White, King, Adams, Blevins, Hall, Turner, Stanley, and Harris under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*See* Order, Mar. 28, 2025 [ECF No. 128].) The court also granted Plaintiff's motions to voluntarily dismiss his claims against D. Mullins and Jackson. (*See id.*; Order, Sept. 11, 2025 [ECF No. 155].) Therefore, only Plaintiff's claims against Barton, Looney, Branham, Baker, and Nicky Mullins remain.

Now before the court are two motions for summary judgment: the first filed by Nicky Mullins[1] (the "Mullins MSJ" [ECF No. 134]), and second filed by Defendants Barton and Branham (the "Barton/Branham MSJ" [ECF No. 142].) For the reasons set forth below, the court will grant the Mullins MSJ in part and grant the Barton/Branham MSJ.

## I.

### A. Allegations in Plaintiff's Verified Second Amended Complaint

In his second amended complaint, Plaintiff makes the following sworn allegations concerning his claims against Mullins, Barton, and Branham. Because Plaintiff's second amended complaint is verified, the court considers the sworn factual assertions in the second amended complaint in determining whether there are genuine disputes of material fact that preclude summary judgment. *See Gowen v. Winfield*, 130 F.4th 162, 171 (4th Cir. 2025) ("A verified complaint 'based on personal knowledge' must be treated as 'the equivalent of an opposing affidavit for summary judgment purposes.'" (quoting *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021))).

On July 5, 2022, Plaintiff was transferred from Wallens Ridge State Prison to Red Onion State Prison after he allegedly assaulted Wallens Ridge staff. (Second Am. Compl. ¶¶ 17, 19.) Between July 5 and August 1, 2022, there were no incidents between Plaintiff and prison staff. (*Id.* ¶ 18.)

---

[1] Defendant Jackson filed the motion jointly with Defendant Nicky Mullins. (*See* ECF No. 134.) But since Plaintiff voluntarily dismissed his claims against Jackson (*see* Order, Sept. 11, 2025), the court will deny the portions of the Mullins MSJ seeking summary judgment on the claims against Jackson as moot and consider only whether Mullins is entitled to summary judgment.

On August 1, 2022, Plaintiff was confined, alone, in cell B-312 at Red Onion. (*Id.* ¶ 19.) He had no interaction with prison staff between 10:00 pm and 1:00 am. (*Id.* ¶ 20.) Around 1:02 am, Corrections Officer Baker performed a routine security check for all the cells in the B-3 pod, including Plaintiff's. (*Id.* ¶ 21.) Around 1:08 am, after checking a neighboring cell, Plaintiff claims Baker returned to his cell for no apparent reason and sprayed him with OC spray, waking Plaintiff from his sleep. (*Id.* ¶¶ 21–22.) Plaintiff then got out of bed and asked Baker why he had sprayed him. (*Id.* ¶ 23.) Baker told him, "You shouldn't [be] assaulting staff or threatening them, you f*** with one of us[,] you f*** with all of us." (*Id.*) Plaintiff responded, "I don't know you and never did anything to you," and Baker replied, "Welcome to Red Onion, we will beat your ass if not damn near kill you n*****, if you [are] not good with God you should do so now." (*Id.*) At that time, Corrections Officer D. Mullins arrived at Plaintiff's cell, holding a camera with a closed lens. (*Id.* ¶¶ 25, 29.) Plaintiff suffered loss of vision in his left eye as a result of the OC spray. (*Id.* ¶ 26.)

Later that night, Sgt. Barton, Sgt. Branham, and Sgt. Looney came to the B-3 pod. (*Id.* ¶ 28.) Looney and Branham approached Plaintiff's cell, and one of them asked Plaintiff why he had tried to "pop the sprinklers." (*Id.*) Plaintiff responded that he had not tried to "pop" anything. (*Id.*) One of them then asked Plaintiff if he would "cuff up," and Plaintiff complied by kneeling to be shackled. (*Id.*) Looney and other staff then escorted Plaintiff to the shower to rinse the OC spray off. (*Id.* ¶ 30.) While Plaintiff was in the shower, Barton, Looney, Branham, Baker, Nicky Mullins, D. Mullins, and Jackson yelled at him to "stop resisting." (*Id.* ¶ 31.) Looney then slammed Plaintiff into the wall and punched him several times in his side. (*Id.* ¶ 32.) Branham, Baker, Jackson, and Nicky Mullins also used physical force against

Plaintiff. (*Id.*) During this altercation, Plaintiff was hit on his side, and someone stepped on his shackles, twisted his cuffs, and bent his wrists. (*Id.*) Plaintiff was then pulled out of the shower, still wet and wearing only shorts and socks, and was escorted to medical and placed in a strip cell. (*Id.* ¶¶ 33–34.) Plaintiff suffered cuts on his ankles and wrists because of Defendants' actions. (*Id.* ¶ 35.)

Based on the events occurring that night, Baker charged Plaintiff with "attempting to destroy state property," and Looney charged him with "disobeying a direct order" (*Id.* ¶ 43.) Following his hearings on these charges, Plaintiff attended a disciplinary hearing where these infractions were used as evidence of his behavioral issues and to justify placing Plaintiff in long-term segregation, indefinite solitary confinement, and a "step-down program." (*Id.* ¶ 48.) Plaintiff was also placed at GCA (which the court understands to mean "good-conduct allowance") level 4, meaning he could not earn any good-time credit. (*Id.*) He received other penalties as well, including spending almost all of his time in an 8' x 10' cell, with no way to exercise, no television, no educational opportunities, no law-library access, no religious services or other out-of-cell programming, no haircuts, limited commissary access, and only three showers per week. (*Id.* ¶ 49.) His visitation was also limited to a one-hour no-contact in-person visit, one video visit, and two 20-minute calls per month. (*Id.*) Plaintiff claims there is no meaningful way out of these limitations. (*Id.* ¶ 50.)

As relevant to the pending motions for summary judgment, Plaintiff brings the following § 1983 claims based on his allegations. He claims Barton's failure to intervene or take disciplinary action toward his subordinates renders him liable under the Eighth Amendment for failure to protect, deliberate indifference to Plaintiff's health and safety, and

based on a theory of supervisory liability. (*Id.* ¶ 62.) He also brings claims for gross negligence and intentional infliction of emotional distress ("IIED") against Barton under Viriginia state law.[2] (*Id.*)

Plaintiff claims that Branham violated the Eighth Amendment by his own use of excessive force and as a bystander for failing to prevent the misuse of force by other officers. (*Id.* ¶ 63.) Plaintiff also asserts state-law claims for gross negligence and IIED against Branham. (*Id.*)

Plaintiff also claims that Nicky Mullins violated the Eighth Amendment's prohibition on cruel and unusual punishment by using excessive force against him and under a theory of bystander liability. (*Id.* ¶ 64.) And Plaintiff brings state law gross negligence and IIED claims against Mullins as well. (*Id.*)

## B. Defendants' Summary Judgment Evidence

### i.   Defendant Mullins's Evidence

In support of his motion for summary judgment, Mullins relies on statements in Plaintiff's verified second amended complaint (Mullins Ex. 1 [ECF No. 135-1]) and on internal incident reports filed after the August 1, 2022 incident (Mullins Ex. 2 [ECF No. 135-2]).

---

[2] Plaintiff also attempts to assert state-law claims for "personal injury" against Barton, Branham, and Mullins. (*See* Second Am. Compl. ¶¶ 62–64.) But "personal injury" is not an independent cause of action under Virginia law; rather, the term refers to a category of harm that can give rise to other claims when an applicable cause of action exists in tort or statute. *See, e.g.*, *Schmitt-Doss v. Am. Regent, Inc.*, No. 6:12-CV-00040, 2014 WL 3853184, at *3–4 (W.D. Va. Aug. 5, 2014), *aff'd* 599 F. App'x 71 (4th Cir. 2015) (describing plaintiff's case as a "personal injury action" generally and then assessing whether plaintiff's evidence created genuine issues of material fact with respect to individual tort and products-liability causes of action); *Chilton v. Homestead, L.C.*, 79 Va. Cir. 708 (2008) (analyzing plaintiff's "personal injury" claim to determine whether plaintiff had successfully proven a negligence claim requiring proof of duty, breach, causation, and harm); *Slaughter v. Duling*, 33 Va. Cir. 476 (1972) (same). Injury can also be, and often is, an element of such claims. Accordingly, the court does not assess Plaintiff's claims for "personal injury" as standalone claims but does consider whether, for the purposes of his gross-negligence and IIED claims, there are genuine issues of material fact concerning Plaintiff's claimed injuries and damages.

Mullins generally agrees with Plaintiff's version of events leading up his being escorted to the shower for decontamination. (*See* Memo. in Supp. of Mullins MSJ 2–3 [ECF No. 135].) Mullins's incident report from August 1, 2022 offers the following perspective on what occurred once Plaintiff was in the shower. (*See* Mullins Ex. 2, at 7.)

At approximately 1:10 a.m. on August 1, 2022, Mullins helped other officers maintain control of Plaintiff while he was in the shower for decontamination after his OC exposure. (*Id.*) While in the shower, Plaintiff became disruptive and turned toward staff on multiple occasions. (*Id.*) After the shower, Plaintiff was escorted to the medical department and assessed by medical staff. (*Id.*) At that point, Mullins relieved Sgt. Looney and escorted Plaintiff back to his assigned cell. (*Id.*) Mullins also helped place Plaintiff on strip-cell status based on his "disruptive and combative behavior." (*Id.*)

ii.    Defendants Barton and Branham's Evidence

Barton and Branham offer three exhibits in support of their motion for summary judgment. (*See* Barton/Branham Ex. A [ECF No. 143-1]; Barton/Branham Ex. B [ECF No. 143-2]; Barton/Branham Ex. C [ECF No. 143-3].) First, they offer Branham's body-camera footage from August 1, 2022. (*See* Barton/Branham Ex. A.) Second, they offer Barton's body-camera footage from that day. (*See* Barton/Branham Ex. B.) And third, they offer medical records documenting Plaintiff's medical status and treatments during the month of August 2022. (*See* Barton/Branham Ex. C.) Barton and Branham's evidence supports the following version of events.

Both Barton and Branham arrived at Plaintiff's cell after he had been sprayed with OC spray, both wearing body cameras. (*See* Barton/Branham Ex. A at 1:10:43–1:12:11;

Barton/Branham Ex. B at 1:11:03–1:12:21.) They were accompanied by several other officers. (Barton/Branham Ex. A at 1:10:43–1:12:11; Barton/Branham Ex. B at 1:11:03–1:12:37.) After arriving at the cell, Barton asked the other officers whether anyone had started recording the interaction with a handheld camera. (Barton/Branham Ex. B at 1:11:55–1:12:07.) When they responded no, Barton said they should get a handheld camera, and an officer left to obtain one. (*Id.*)

When the officers opened the cell door, Plaintiff was already in handcuffs and kneeling to be shackled. (*Id.* at 1:12:15–1:12:24.) The group of officers escorted Plaintiff to the shower. (*Id.* at 1:12:48–1:13:40; Barton/Branham Ex. A at 1:12:35–1:13:36.) While they were escorting Plaintiff, Barton directed another officer to start the handheld camera he had retrieved. (Barton/Branham Ex. B at 1:13:04–1:13:09.) Neither Branham nor Barton had any physical contact with Plaintiff on the way from his cell to the shower. (*Id.* at 1:11:03–1:13:40; Barton/Branham Ex. A at 1:12:35–1:13:36.) Two other officers held Plaintiff's arms as they escorted him and placed him in the shower, while Barton and Branham followed from behind. (Barton/Branham Ex. A at 1:12:35–1:13:36; Barton/Branham Ex. B at 1:12:48–1:13:40.)

Branham did not initially enter the shower area with Plaintiff. (Barton/Branham Ex. A at 1:13:34–1:13:44.) The two officers physically escorting Plaintiff held onto him while Plaintiff was in the shower and Mullins stood between Plaintiff, who was under the showerhead, and Branham, who lingered in the doorway. (*Id.* at 1:13:34–1:14:03.) While Plaintiff was still under the water, the officers holding Plaintiff began yelling "whoa, easy" and "hey, hey, hey," and Mullins approached to assist during the commotion. (*Id.* at 1:14:04–1:14:55.) The two officers who had escorted Plaintiff held him to the shower wall, and Mullins stepped near the other

officers and had his forearms resting on the officers' backs. (*Id.*) Mullins does not appear to have touched Plaintiff directly. (*Id.*)

Once the yelling started and Plaintiff was against the wall, Branham also stepped into the shower and yelled for Plaintiff to "quit resisting" and "stop" and "don't resist." (*Id.* at 1:14:06–1:14:25.) While the two other officers held him against the wall, and with Mullins's body between him and the Plaintiff, Branham reached out his left hand and placed it on Plaintiff's shoulder for about 9 seconds. (*Id.* at 1:14:06–1:14:19.) Branham then removed his hand and repeatedly told Plaintiff not to move. (*Id.* at 1:14:18–1:14:37.) Less than a minute later, the wheelchair arrived to escort Plaintiff to medical and all parties left the shower. (*Id.* at 1:14:54–1:15: 12.)

Barton never entered the shower area himself, but stood back, with his body camera on, while other officers entered the shower area with Plaintiff. (Branham/Barton Ex. B at 1:13:29–1:14:45.) The entire time Plaintiff was in the shower, there were multiple officers between him and Barton, and Barton initially turned and faced away from the shower once Plaintiff was inside. (*Id.* at 1:13:29–1:15:12.) While waiting and facing away from the shower, Barton radioed medical. (*Id.* at 1:14:01–1:14:04.) Barton was not facing the shower at the time the officers started yelling. (*Id.* at 1:14:05–1:14:19.) After Branham repeatedly yelled, "Do not move again," Barton turned around. (*Id.* at 1:14:14–1:14:05.) But Barton's view of Plaintiff was obstructed by several other officers who stood in between Plaintiff, in the shower, and himself, still outside the shower area. (*See id.*) Though Barton could hear what was going on, he did not see what caused the other officers to press Plaintiff into the shower wall and restrain him. (*Id.*)

After Plaintiff declared that he could not move and was not resisting, and while other

officers were still shouting, Barton approached the doorway to the shower and told Plaintiff to "listen to what the sergeants tell you to do" and asked him, "Do you understand?" (*Id.* at 1:14:38–1:14:45.) Plaintiff replied, "Yes, sir." (*Id.*) Barton then asked Plaintiff if he needed more water. (*Id.* at 1:14:45–1:14:46.) Plaintiff again stated that he was not resisting, and Barton told him, "Do not try to pull away from staff." (*Id.* at 1:14:45–1:14:49.) Plaintiff then answered that he did not need more water. (*Id.* at 1:14:48–1:15:05.) Another officer told Plaintiff to stay where he was and that he would be transported to medical via wheelchair. (*Id.* at 1:15:04–1:15:09.) Barton again told Plaintiff to listen to and not pull away from staff. (*Id.* at 1:15:08–1:15:12.)

Plaintiff was then put into a wheelchair, and the group of officers escorted him to medical. (*Id.* at 1:15:11–1:18:20.) Two other officers pushed the chair while Barton, Branham, and others followed behind. (*See id.*) Once there, Barton told Plaintiff that the officers escorting him would stand him up and he would be assessed shortly. (*Id.* at 1:18:30–1:18:41.)

At 1:19 a.m., a nurse arrived to assess him. (*Id.* at 1:19:06–1:19:25.) The nurse asked Plaintiff whether he had any medical complaints, and Plaintiff responded that he could not see and complained about his ankles. (*Id.* at 1:19:25–1:19:38.) He did not state that he had any other pain or injuries. (*Id.*) The nurse examined Plaintiff and noted no swelling in his ankles. (*Id.* at 1:19:38–1:22:45.) Neither Barton nor Branham had any physical contact with Plaintiff while he was in medical. (*See id.* 1:18:20–1:25:38.)

Once Plaintiff was medically cleared, he was escorted back to his cell in the wheelchair and placed on strip-cell status. (*Id.* at 1:24:54–1:32:26.) Neither Barton nor Branham had any physical contact with Plaintiff while he was being escorted from medical back to his cell. (*See*

*id.*) A couple of minutes into the walk back, Barton directed Mullins to relieve Looney as one of the officers pushing Plaintiff's wheelchair. (*Id.* at 1:26:50–1:27:05.) Once at the pod, Mullins also helped escort Plaintiff from the chair, up the stairs and into his cell. (*Id.* at 1:28:15–1:30:14.) Throughout their interaction, Mullins had one hand on Plaintiff's shoulder and the other on his arm. (*See id.* 1:27:05–1:30:15.)

Plaintiff did not request any additional medical care related to this incident. (*See* Barton/Branham Ex. C at 2–7.) Plaintiff's medical records show that on August 1, 2022 around 1:15 a.m., Plaintiff was brought to medical for assessment "during shower decontamination for OC use." (*Id.* at 4.) The nurse noted in his records that he complained of ankle pain but showed no redness, bruising, or edema on his ankles and was able to stand on his feet without difficulty. (*Id.*)

## C. Plaintiff's Summary Judgment Evidence

Plaintiff responded to both motions for summary judgment. (*See* Pl.'s Resp. in Opp'n to Mullins MSJ [ECF No. 180-1]; Pl.'s Response in Opp'n to Barton/Branham MSJ [ECF No. 180-2].) Along with his response briefs, Plaintiff submitted an additional copy of his second amended complaint (Pl. Ex. 1 [ECF No. 180-3, at 1–25]), copies of the internal incident reports in support of the Mullins MSJ (Pl. Ex. 2 [ECF No. 180-3, at 26–31]), an affidavit by Michael D. Watson (Pl. Ex. 3 [ECF No. 180-3, at 32]), a copy of his appeal of his disciplinary charge for disobeying an order (Pl. Ex. 4 [ECF No. 180-3, at 33–35]), and a single-page excerpt of Defendants Baker, Jackson, Looney, D. Mullins, and Nicky Mullins's answer to Plaintiff's amended complaint (Pl. Ex. 5 [ECF No. 180-3, at 36].)

In his response briefs, Plaintiff cites these exhibits and the body-camera footage

- 10 -

offered by Barton and Branham to offer the following version of events. On August 1, 2022, Plaintiff was sprayed with OC spray by Baker after Baker accused him of attempting to destroy property. (Pl. Ex. 1, at 7; Pl. Ex. 2, at 1.) Plaintiff, compliant and restrained, was then escorted to the shower to be decontaminated. (Pl. Ex. 1, at 8.) After he was placed under the water, Looney and Mullins yelled "whoa, easy" and Branham yelled for him to "stop resisting." (Pl.'s Resp. in Opp'n to Barton/Branham MSJ 2 (citing Barton/Branham Ex. A at 1:13:30-1:15:30).) Mullins, Looney, and Branham all "used force against him" while Plaintiff was in the shower. (*Id.* (citing Pl. Ex. 1, at 8); *see also* Pl. Ex. 2, at 2.) Mullins states in his answer to Plaintiff's amended complaint that he "used the least amount of force necessary" to maintain control of Plaintiff. (Pl. Ex. 5 ¶ 16.) Barton was not facing the shower for some of Plaintiff's time in the shower. (Pl.'s Resp. in Opp'n to Barton/Branham MSJ 2 (citing Barton/Branham Ex. B at 1:13:00–1:15:30).)

Plaintiff complains he suffered both physical and mental injuries as a result of the August 1, 2022 incident. (Pl. Ex. 1, at 9, 19–20.) Plaintiff also complained of injuries during his visit to medical that night. (Barton/Branham Ex. A at 1:17:00–1:26:00.) While in medical, neither the officers nor the nurse took photos of his ankles despite Plaintiff's complaints about his ankles. (*Id.* (citing Barton/Branham Ex. B at 1:17:00–1:25:30).)

After returning from medical, Plaintiff was placed on strip-cell status while still wet from the shower. (Pl. Ex. 1, at 9; Pl. Ex. 2, at 2.)

## II.

Summary judgment under Federal Rule of Civil Procedure 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the

moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). But the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022) (quoting *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022)).

### III.

#### A. Plaintiff's 42 U.S.C. § 1983 Claims

Several of Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a citizen to bring a civil action for deprivation of their "rights, privileges, or immunities secured by the

Constitution and laws" of the United States by a person acting under color of state law. 42

U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487

U.S. 42, 48 (1988).

Each of Plaintiff's § 1983 claims against Mullins, Barton, and Branham arise under the

Eighth Amendment. "[T]he treatment a prisoner receives in prison and the conditions under

which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*,

511 U.S. 825, 832 (1994) (citations omitted). "In its prohibition of 'cruel and unusual

punishments,' the Eighth Amendment places restraints on prison officials, who may not, for

example, use excessive physical force against prisoners." *Id.* (citations omitted). "The

Amendment also imposes duties on these officials, who must provide humane conditions of

confinement." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015) (citing *Farmer*, 511 U.S. at

832). Plaintiff claims that Mullins, Barton, and Branham violated the Eighth Amendment in

several ways. (*See* Second Am. Compl. ¶¶ 62–64.) The court addresses each theory of liability

in turn.

i.   Excessive Force

"A prisoner bringing an Eighth Amendment excessive force claim must make two

showings—one objective, the other subjective." *Alexander v. Connor*, 105 F.4th 174, 182 (4th

Cir. 2024). The objective prong measures the gravity of the force employed; it "asks whether

the force applied was sufficiently serious to establish a cause of action." *Id.* (quoting *Brooks v.*

*Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar, requiring only something

more than '*de minimis*' force." *Brooks*, 924 F.3d at 112; *see also Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021) ("[T]rivial force is not enough, but anything more will suffice."). But "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

The subjective prong, on the other hand, presents "a demanding standard" that asks whether the officer acted with "a sufficiently culpable state of mind." *Alexander*, 105 F.4th at 182 (quoting *Brooks*, 924 F.3d at 112, 119. "[W]antonness in the infliction of pain" is required to satisfy the subjective prong. *Brooks*, 924 F.3d at 112. Whether a defendant acted with wantonness turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *see also Brooks*, 924 F.3d at 113 ("[C]orrections officers cross the line into impermissible motive . . . when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination.").

Because "[d]irect evidence of motive or intent may be hard to come by," *Dean*, 984 F.3d at 302, the Supreme Court has identified factors from which a defendant's subjective state of mind can be inferred:

> [T]he extent of injury suffered . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

*Hudson*, 503 U.S. at 7 (cleaned up); *Brooks*, 924 F.3d at 116. While the severity of any resulting injury factors into whether a defendant used excessive force, the force itself is what "ultimately

counts." *Wilkins*, 559 U.S. at 38; *see also Hudson*, 503 U.S. at 10 (noting that the "minor" nature of the injuries "provide[d] no basis for dismissal"). Still, the extent of injury is relevant in determining "the amount of force applied" and "whether the use of force could plausibly have been thought necessary." *Wilkins*, 559 U.S. at 37 (quoting *Whitley*, 475 U.S. at 321).

Plaintiff brings Eighth Amendment excessive-force claims against Mullins and Branham. (*See* Second Am. Compl. ¶¶ 63–64.) In support of his claims, Plaintiff's verified second amended complaint states that both Mullins and Branham were present during his decontamination shower. (*Id.* ¶¶ 31–32.) He states that Branham, Mullins, and others "began to use force" on him after Looney slammed him into the wall. (*Id.* ¶ 32.) His second amended complaint defers to video evidence to determine "who did what." (*Id.*)

Body-camera footage of the incident shows that Mullins was nearby and rested his forearms on the backs of other officers but did not touch Plaintiff directly. (Barton/Branham Ex. A at 1:14:04–1:14:55.) The footage also shows that Branham's only contact with Plaintiff was to place his left hand on Plaintiff's shoulder for about 9 seconds while reaching over the bodies of the two restraining officers and Mullins. (*See id.* at 1:14:06–1:14:19.) Less than a minute later, all parties left the shower. (*Id.* at 1:14:54–1:15: 12.)

### a.  *Defendant Mullins*

Mullins seeks summary judgment on Plaintiff's excessive-force claim on the grounds that Plaintiff cannot show that Mullins used any force at all or that Plaintiff suffered more than *de minimis* injury. (Memo. in Supp. of Mullins MSJ 5.)

Plaintiff opposes summary judgment arguing that there was no need for Mullins to use any force at all and therefore any force employed by Mullins was "excessive." (Pl.'s Resp. in

Opp'n to Mullins MSJ 5 [ECF No. 180-1].) Plaintiff claims that he was fully restrained and posed no threat to Mullins at the time the force was applied. (*Id.*) Plaintiff also argues that the injuries he sustained after the incident were not "minor" but that he suffered significant physical and mental scars. (*Id.*) Plaintiff further urges the court to deny summary judgment because Mullins admits to using force against Plaintiff in both his answer and his incident report despite no need to forcefully restrain Plaintiff. (*Id.*)

Based on the evidence in the record, there is no genuine dispute of fact that precludes summary judgment in Mullins's favor on Plaintiff's Eighth Amendment excessive-force claim. As a preliminary matter, the evidence Plaintiff relies on does not actually state that Mullins physically touched Plaintiff or employed any force toward Plaintiff at all during the altercation in the shower. Mullin's incident report does not admit to use of any force by Mullins himself; though it describes the "type of incident" as "use of force; including physical force" and "chemical agents," it states only that Mullins "assisted maintaining control of inmate . . . while in the shower for decontamination after oc exposure." (Mullins Ex. 2, at 2; Pl. Ex. 2, at 2.) And the answer to Plaintiff's amended complaint states only that "Defendants Looney, N. Mullins and assisting staff maintained control of Plaintiff" while he was in the shower and that "Defendants Looney, N. Mullins and assisting staff used the least amount of force necessary to regain and maintain control of plaintiff's combative behavior by placing him against the shower wall." (Pl. Ex. 5 ¶¶ 14, 16.) None of these statements, nor any in Plaintiff's verified second amended complaint, describes an actual use of physical force by Mullins as opposed to another officer. And the video evidence offered—to which Plaintiff defers in both his second amended complaint and response brief—shows that Mullins did not touch Plaintiff

directly at any point in the shower. (*See* Barton/Branham Ex. A at 1:14:04–1:14:55); *see Littlejohn v. Parker*, No. 7:24-CV-1147-TMC-KFM, 2025 WL 1900494, at *5 (D.S.C. June 18, 2025), *report and recommendation adopted*, No. 7:24-CV-01147-TMC, 2025 WL 1898964 (D.S.C. July 9, 2025) (recommending that summary judgment be granted for officer where "the undisputed video evidence . . . shows that [the officer] did not touch or otherwise use any force against the plaintiff").

Even if the statements in Mullins's incident report and answer could create a genuine dispute of material fact as to whether Mullins "used force" against Plaintiff, no reasonable jury could find that Mullins used unconstitutional *excessive* force against Plaintiff. First, there is no evidence that any contact between Mullins and himself was anything more than *de minimis. See Brooks*, 924 F.3d at 112; *Dean*, 984 F.3d at 302; *see also Witt v. Chaudry*, No. 1:10CV1164 LO/IDD, 2011 WL 6140959, at *4 (E.D. Va. Dec. 9, 2011), *aff'd sub nom. Witt v. Chaundry*, 470 F. App'x 138 (4th Cir. 2012) (granting summary judgment for officers on Eighth Amendment excessive-force claim where no evidence showed that defendants "touch[ed], push[ed], or shove[d] [Plaintiff] while he was in their custody"). Second, there is no evidence that Mullins acted maliciously or sadistically to inflict pain rather than in a good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 7. Though Plaintiff claims he suffered physical scars as a result of the events occurring August 1, 2022, he does not offer any evidence that would allow the court to infer that Mullins's conduct caused him physical harm.

Plaintiff also admits that Mullins employed the least amount of force necessary under the circumstances. And even considering Plaintiff's evidence that the need for any force was extremely low, the amount of force applied—if any—appears to also have been extremely low

and tempered to the needs of the moment. *See id.* Based on the evidence in the record, Mullins is entitled to judgment as a matter of law on Plaintiff's excessive-force claim against him.

### b. *Defendant Branham*

Branham seeks summary judgment on Plaintiff's excessive-force claim on the bases that Branham had no more than trivial or *de minimis* contact with Plaintiff and that, as a matter of law, "[p]lacing a hand on a prisoner's shoulder is not excessive force." (Memo. in Supp. of Barton/Branham MSJ 6–7 [ECF No. 143].) Plaintiff does not argue that the contact from Branham was more than trivial but instead insists that there was no need for any force so any force was excessive. (Pl.'s Resp. in Opp'n to Barton/Branham MSJ 4.)

As with Plaintiff's claim against Mullins, no reasonable jury could find that Branham used excessive force against Plaintiff. The undisputed evidence shows that Branham's contact with Plaintiff was *de minimis*, and Plaintiff therefore cannot satisfy the objective prong of his Eighth Amendment excessive-force claim. *See Dawson v. Loving*, No. CV 4:14-3428-DCN-TER, 2015 WL 9999187, at *4 (D.S.C. Aug. 21, 2015), *report and recommendation adopted*, No. 4:14-CV-3428 DCN, 2016 WL 429489 (D.S.C. Feb. 4, 2016) (recommending the court grant summary judgment in favor of officer on Eighth Amendment excessive-force claim where officer escorted inmate to his cell by placing one arm under inmate's should and his other hand on inmate's wrist, finding that, even if inmate's allegations that officer also yanked on inmate's lead chain were believed, there was still no evidence of constitutionally excessive force); *Webb v. Dennis*, No. 2:07-CV-153-MEF, 2007 WL 1441199, at *1 (M.D. Ala. May 16, 2007) (dismissing Eighth Amendment excessive force claim against officer who pushed inmate on his back, despite plaintiff's allegations that there was no need for any force, because the

physical contact "was at most a *de minimis* use of physical force"); *cf. Porter v. Munoz*, No. 2:16-CV-01702 LEK, 2019 WL 424197, at \*6 (E.D. Cal. Feb. 4, 2019) (finding contacts consisting of officer "grabbing" plaintiff's arm were *de minimis*).

Moreover, no evidence creates a genuine dispute of fact as to whether Branham acted with a sufficiently culpable state of mind. Even if, as Plaintiff claims, no force was necessary, the undisputed evidence shows that Branham's touch to Plaintiff's shoulder was exceedingly limited in both time and severity. And Plaintiff offers no evidence that he was injured *by Branham* as a result of this brief contact. Accordingly, Branham, too, is entitled to judgment as a matter of law on the excessive-force claim against him.

### ii.  Bystander Liability

"Bystander liability is premised on an officer's 'affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers.'" *Johnson v. Robinette*, 105 F.4th 99, 123–24 (4th Cir. 2024) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 124 (quoting *Randall*, 302 F.3d at 204); *see also Randall*, 302 F.3d at 203 ("[I]f a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly.") (citations omitted). "The bystanding officer must know of his fellow officer's misconduct." *Johnson*, 105 F.4th at 124 (quoting *Randall*, 302 F.3d at 204 n.24). "If the bystander lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of

personal liability is impermissible." *Id.* (quoting *Randall*, 302 F.3d at 204 n.24).

In his second amended complaint, Plaintiff claims both Mullins and Branham are liable as bystanders for failing to intervene to stop the Eighth Amendment violations of other officers. (*See* Second Am. Compl. ¶¶ 63–64.) Plaintiff's response to Mullins's motion for summary judgment, however, appears to abandon his failure-to-intervene claim as to Mullins. (*See* Pl.'s Resp. in Opp'n to Mullins MSJ 6 (crossing out the heading "Plaintiff's Failure to Intervene Claim Should Proceed to Trial" and the sentence describing the standard for bystander liability below the heading, instead proceeding straight to his conclusion); *see also id.* (stating in conclusion that "Defendants [sic] motion for summary judgment should be *partially* denied"). Similarly, Plaintiff's response in opposition to Branham and Barton's motion omits any reference to his bystander-liability claim and argues only that his excessive-force claim against Branham and his state-law gross-negligence and IIED claims should proceed. (*See* Pl.'s Resp. in Opp'n to Barton/Branham MSJ 1–6.) Nevertheless, to properly evaluate whether Mullins and Branham are entitled to summary judgment, especially in light of Plaintiff's *pro se* status, the court considers whether a reasonable jury could find that they are liable to Plaintiff under a theory of bystander liability.

Both Mullins and Branham are entitled to summary judgment on Plaintiff's bystander-liability claims because, even if the court assumes that there is a genuine issue of material fact as to whether the two officers in the shower who were restraining Plaintiff acted unconstitutionally, Plaintiff offers no evidence to create a genuine issue of material fact as to whether Mullins and Branham could have intervened but chose not to.

Plaintiff's second amended complaint states that Looney placed him under the water

and Looney was the one who slammed Plaintiff into the shower wall. (Second Am. Compl. ¶¶ 30– 32.) And the undisputed video evidence shows that Mullins and Branham did not approach until after Plaintiff was already pressed against the shower wall. (*See* Barton/Branham Ex. A at 1:14:04–1:14:55.) The video footage also shows that neither officer restraining Plaintiff did anything other than hold Plaintiff in place against the wall after Mullins and Branham approached. (*Id.*) To the extent Plaintiff claims that shoving him against the shower wall was unconstitutional, he has not offered any evidence from which a reasonable jury could find that Mullins or Branham knew the other officers were acting illegally and neglected a reasonable opportunity to prevent their actions. *Cf. Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015) (affirming summary judgment in favor of officer for failing to intervene where the other officer's use of force was "fairly immediate" and plaintiff "did not proffer any evidence from which a juror could rationally infer that the officers who were present had a realistic opportunity to prevent [it]"); *Wallin v. Dycus*, 381 F. App'x 819, 823–24 (10th Cir. 2010) (affirming summary judgment in officer's favor on failure-to-intervene claim on the basis that officer had no realistic opportunity to intervene to prevent plaintiff's placement in too-tight restraints where the evidence established that the restraints were removed after plaintiff complained they were too tight and "the entire restraint incident lasted approximately two minutes"). The court will therefore grant summary judgment in favor of both Mullins and Branham on Plaintiff's bystander-liability claims to the extent any such claim remains.

     iii.  <u>Failure to Protect and Deliberate Indifference</u>

Included in the Eighth Amendment guarantee is a requirement that prison officials

"take reasonable measures to guarantee the safety of the inmates." *Cox v. Quinn*, 828 F.2d 227, 235 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 832). But a prison official's failure to prevent an injury does not automatically rise to the level of a constitutional violation. *See Farmer*, 511 U.S. at 834. To state a claim against a prison official for failure to protect, an inmate must allege facts showing that (1) "the deprivation alleged [is], objectively, sufficiently serious" and (2) the prison official had a "sufficiently culpable state of mind." *Id.* (citations omitted).

To satisfy the first element, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (citations omitted). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citing *Hudson*, 503 U.S. at 8–9).

To satisfy the second element, the plaintiff must plead facts showing the defendant was "deliberately indifferent" to the plaintiff's health and safety. *See Farmer*, 511 U.S. at 834 (citations omitted). Deliberate difference is "a very high standard." *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) (citations and internal quotation marks omitted). "A prison official demonstrates deliberate indifference if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Odom*, 349 F.3d at 770). To state an Eighth Amendment claim, the plaintiff must allege the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" *and* that he or she actually drew the inference. *Id.*

- 22 -

Plaintiff claims that Defendant Barton is liable under the Eighth Amendment for failing to protect him from excessive force used by other officers.[3] (Second Am. Compl. ¶ 62.) Plaintiff also claims that Barton is liable based on his deliberate indifference to Plaintiff's health and safety. (*Id.*) Since deliberate indifference an element of an Eighth Amendment failure-to-protect claim rather than a stand-alone theory of liability, *see Farmer*, 511 U.S. at 834, the court analyzes his failure-to-protect and deliberate-indifference claims together.

Barton is entitled to summary judgment on Plaintiff's failure-to-protect claim because, even if there are genuine disputes of material fact concerning whether he suffered a sufficiently serious injury due to the other officers' conduct, no reasonable jury would find that Barton acted with deliberate indifference toward Plaintiff's health and safety. Nothing in the record suggests that Barton actually perceived and disregarded an excessive threat to Plaintiff's health or safety. *Brown*, 612 F.3d at 723.

At the time of Plaintiff's alleged injury, Barton knew that he was in the care of several other officers in the shower, and Plaintiff offers no evidence that Barton should have or did reasonably infer that allowing other officers to escort him into the shower for a recorded decontamination in the presence of several witnesses exposed Plaintiff to a substantial risk of harm. Instead, the undisputed evidence shows that Barton made a point to ensure the interactions with Plaintiff were being recorded, radioed medical on Plaintiff's behalf, stepped

---

[3] Plaintiff appears to have abandoned his failure-to-protect claim against Barton. (*See* Pl.'s Resp. in Opp'n to Barton/Branham MSJ 1–6 (omitting any reference to his failure-to-protect claim and asking only that his excessive-force claim, gross-negligence claims, and IIED claims proceed to trial).) However, Barton and Branham's brief in support of their motion for summary judgment appears to conflate this claim with Plaintiff's bystander-liability claim. (*See generally* Memo. in Supp. of Barton/Branham MSJ (seeking summary judgment and an order dismissing them entirely from the case but only discussing excessive force and failure to intervene).) Therefore, the court independently reviews the entire record to determine whether any genuine issue of fact precludes summary judgment in Barton's favor on Plaintiff's failure-to-protect claim.

closer when he heard shouting, asked Plaintiff if he needed more water, and repeatedly asked Plaintiff if he understood his directions. Therefore, Barton is entitled to judgment as a matter of law on Plaintiff's failure-to-protect claim (and thus his deliberate-indifference claim).

 iv.  Supervisory Liability

"[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Johnson*, 105 F.4th at 123 (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). To hold a supervisor liable under § 1983 for the misconduct of his subordinates, a plaintiff must prove (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff," (2) "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (quoting *Shaw*, 13 F.3d at 799).

In his second amended complaint, Plaintiff raises an Eighth Amendment claim against Barton based on supervisory liability.[4] Barton is entitled to summary judgment on Plaintiff's supervisory-liability claim because, as with Plaintiff's failure-to-protect claim, no reasonable jury would find Barton's actions so inadequate as to show deliberate indifference to any

---

[4] Again, Plaintiff appears to have abandoned this claim. (*See* Pl.'s Resp. in Opp'n to Barton/Branham MSJ 1–6 (omitting any reference to his supervisory-liability claim and asking only that his excessive-force claim, gross-negligence claims, and IIED claims proceed to trial).) But, again, Barton seems to have conflated this claim with Plaintiff's bystander-liability claim, despite seeking summary judgment on all of Plaintiff's claims against him. To ensure the court only awards summary judgment on claims for which there is no genuine dispute of material fact, the court independently reviews the record to determine whether fact issues preclude summary judgment in Barton's favor on this claim as well.

unlawful actions by the other officers. Nothing in the record suggests that Barton was or should have been aware that the officers in the shower were acting in a manner that posed a pervasive and unreasonable risk of injury to Plaintiff. Barton's status as a supervisor, alone, cannot create liability for him based on the acts of his subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution). The court will therefore grant summary judgment for Barton on this claim, too.

## B. Plaintiff's State-Law Claims

In addition to his § 1983 claims, Plaintiff raises state-law claims for gross negligence and IIED against Mullins, Barton, and Branham. Although Mullins asks the court to "enter summary judgment" on his behalf, his motion and supporting memorandum completely neglect to address, or even mention, Plaintiff's state-law claims. (*See* Mullins MSJ 1 (asking "for entry of summary judgment pursuant to FRCP 56 for the reasons set forth in the Memorandum in Support accompanying this motion"); Memo. in Supp. of Mullins MSJ 1 ("Because the Plaintiff cannot prove that Defendant[] . . . Nicky Mullins used excessive force or failed to intervene, [he] request[s] that this Court enter summary judgment in [his] favor.").) Because Mullins fails to argue for summary judgment on or even name Plaintiff's state-law claims in connection with his motion for summary judgment, the court will deny Mullins's motion with regard to Plaintiff's state-law claims.

### i.   Gross Negligence

Virginia law defines gross negligence as "'a degree of negligence showing indifference

to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487, 603 S.E.2d 916, 918 (2004)). It "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* "To prove gross negligence under Virginia law, the plaintiff must show the basic elements of negligence: 'a legal duty, a violation of the duty, and a consequent injury.'" *DJ by & through Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 340 (E.D. Va. 2020) (quoting *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751, 754 (Va. 1988)). And "[b]ecause the standard for gross negligence in Virginia is one of indifference, not inadequacy, a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott*, 791 S.E.2d at 732 (citations omitted).

Courts analyzing gross-negligence claims based on a prison official's failure to prevent harm to an inmate have found that such claims, like Eighth Amendment failure-to-protect claims, require that the official have knowledge, actual or constructive, of the risk of harm to the inmate. *See, e.g.*, *Hobbs v. Kelly*, No. 1:23CV00003, 2023 WL 3563010, at *4 (W.D. Va. May 19, 2023) (expressing the official's duty as one "to protect an incarcerated person from a substantial and known risk of harm") (citing *Farmer*, 511 U.S. at 836). "A duty of care arises only where the 'particular circumstances of that special relationship' make the danger of harm from a third party foreseeable." *Bradford v. Craom*, No. 0386-22-2, 2023 WL 2487310, at *3 (Va. Ct. App. Mar. 14, 2023) (quoting *Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134, 140 (Va. 2001)).

- 26 -

Branham and Barton seek summary judgment on Plaintiff's claim for gross negligence on the grounds that they did not employ any meaningful force against Plaintiff that could support a negligence claim, they did not breach any duty to intervene, and they both exercised some degree of care during the encounter with Plaintiff. (Memo. in Supp. of Barton/Branham MSJ 11.)

Plaintiff argues that Branham and Barton's motion for summary judgment should be denied as to his gross-negligence claim because Barton and Branham breached their duty of care to Plaintiff by allowing him to be escorted into the shower rather than walking in alone and ignoring the fact that no handheld camera was recording. (Pl.'s Resp. in Opp'n to Barton/Branham MSJ 5.) Plaintiff further argues Braham was grossly negligent because he "used force unnecessarily" and that Barton was grossly negligent because he "just stood there as the highest[-]ranking officer and did nothing." (*Id.*) But none of these creates a genuine dispute of material fact as to whether Barton and Branham were grossly negligent.

First, both Barton and Branham were actively recording the entire incident on their body-worn cameras. Plaintiff therefore cannot reasonably rely on the lack of a handheld camera to record the interaction as evidence of gross negligence as the entire interaction was recorded, reliably, by both Defendants. If anything, the fact that their body cameras were on and recording suggests they did employ some care to protect Plaintiff from harm. Second, the fact that Plaintiff was escorted into the shower by other officers—immediately following a then-uninvestigated altercation with another officer and when he was having difficulty seeing due to the OC spray—is not evidence that either Barton or Branham acted with complete neglect to Plaintiff's safety. Third, neither Barton nor Branham had more than *de minimis*

- 27 -

physical contact with Plaintiff.

Further, to the extent Plaintiff's gross-negligence claim against Barton is based on his failure to adequately supervise the other officers, that claim must also fail because the Supreme Court of Virginia does not recognize claims for negligence based upon negligent supervision. *See A.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 475 (Va. 2019); *see also Johnson v. McCowan*, 549 F. Supp. 3d 469, 476 n.3 (W.D. Va. 2021) (rejecting plaintiff's contention that he could nevertheless bring a gross-negligence claim based on negligent supervision, explaining that "[p]ivoting to gross negligence cannot save [Plaintiff's] negligent supervision claim because its failure lies not in the degree of indifference alleged, but in the underlying theory of culpability" and "[t]he degree to which defendants violated their duty to supervise is irrelevant if the duty doesn't exist in the first instance").

Finally, the undisputed evidence shows that Branham and Barton exercised some degree of care toward Plaintiff. Both watched and remained close by for the entire incident, both called to Plaintiff with clear instructions, and Barton asked if Plaintiff had sufficient time to wash under the shower. *Cf. Fijalkowski v. Wheeler*, 361 F. Supp. 3d 577, 593–94 (E.D. Va. 2019), *aff'd*, 801 F. App'x 906 (4th Cir. 2020) (noting facts that police officers "attempted to communicate with plaintiff" and "monitored plaintiff during the entire time they were on the scene" as evidence that they exercised some care and were not "completely indifferent or neglectful with respect to plaintiff's safety"). Additionally, immediately after the encounter in the shower, Barton and Branham escorted Plaintiff to medical to be examined. *Cf. Sams v. Armor Corr. Health Servs., Inc.*, No. 3:19CV639, 2020 WL 5835310, at *34 (E.D. Va. Sept. 30, 2020) (fact that correctional officers sought medical aid for plaintiff showed that they exercised

- 28 -

some degree of care so as to preclude gross-negligence claim); *Henderson v. Huling*, No. 4:16-CV-166, 2017 WL 4209761, at \*5 (E.D. Va. Sept. 20, 2017) (finding gross-negligence claims against police officers failed because the officers called an ambulance after the alleged excessive force).

Because the court finds that, even construing the facts Plaintiff cites in the light most favorable to him, no reasonable jury would find that Barton and Branham were grossly negligent under Viriginia law, the court will award summary judgment in Barton and Branham's favor on Plaintiff's gross-negligence claim.

ii.  Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress under Virginia law requires proof that (1) "the wrongdoer's conduct was intentional or reckless"; (2) "the conduct was outrageous or intolerable"; (3) "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress"; and (4) "the resulting emotional distress was severe." *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007). "[B]ecause of the risks inherent in torts where injury to the mind or emotions is claimed, such torts are not favored in the law." *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) (citations and internal quotation marks omitted).

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the resulting emotional distress was "extreme" and "so severe that no reasonable person could be expected to endure it." *Kissinger-Stankevitz v. Town of Tappahannock*, 750 F. Supp. 3d 590, 631 (E.D. Va. 2024) (citations omitted). Allegations that a plaintiff "was nervous, could not sleep, experienced stress and its physical symptoms, withdrew from activities, and was unable to concentrate at work" are insufficient to state a plausible claim for relief. *Russo v.*

*White*, 400 S.E.2d 160, 163 (Va. 1991).

Barton and Branham argue that Plaintiff's IIED claim fails as a matter of law because their conduct was not intentional, reckless, outrageous, or intolerable and because no reasonable juror could find that their actions proximately caused Plaintiff emotional distress. (Memo. in Supp. of Barton/Branham MSJ 12–13.) Plaintiff opposes summary judgment, arguing that "Branham and Barton's conduct [was] blatantly reckless and intentional" because it was performed "in disregard of the[ir] duty to protect and follow policy" and because "[t]o harm any individual for no reason is intolerable." (Pl.'s Resp. in Opp'n to Barton/Branham MSJ 6.) He also urges that he suffered severe emotional distress because he still has trouble with "normal day[-]to[-]day activities." (*Id.*)

Given the undisputed evidence in the record, no reasonable jury would find that Barton or Branham's conduct was "outrageous or intolerable" as necessary to establish IIED under Virginia law. It is undisputed that Barton had no physical interaction with Plaintiff and that Branham's interaction with him consisted only of a touch on the shoulder that lasted less than ten seconds. They did not attack him, provoke him, or cause him any physical harm. Their actions are clearly not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007) (citations omitted). The court will therefore award summary judgment to Branham and Barton on Plaintiff's claims for intentional infliction of emotional distress.

## IV.

For the foregoing reasons, the motion for summary judgment filed by Defendants

Nicky Mullins and Derrick Jackson (ECF No. 134) will be granted in part and denied in part, and the motion for summary judgment filed by Defendants D. Branham and Douglas Barton (ECF No. 142) will be granted.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 30th day of March, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE